# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **EDWIN R. BANKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:20-cv-0565-LCB** |
| | ) | |
| **ALEX AZAR,** | ) | **OPPOSED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## EDWIN BANK'S OPPOSITION TO MOTION TO DISMISS

Pursuant to this Court's Order of September 20, 2021, Mr. Banks submits the following Opposition to the Secretary's motion to dismiss.  *See* Doc. 65.  In the interests of brevity, Mr. Banks refers the Court to his own brief, previously filed, and will endeavor to limit his remarks here.  *See* Doc. 67.  The Secretary's motion should be denied and Mr. Banks has standing.

Before turning to the arguments and a detailed reviewed of statutes and legal principles, it may be helpful to just consider things practically.  Suppose that there is an insurance program and, in order to even be eligible, you have to pay into a special fund for your entire working life (at least 10 years) and are only eligible when you turn 65.  Between you and your employer, the payments are ~3% of your

1

earnings each year.[1]  Then, in order to actually be in the program when you turn 65, you pay a monthly premium (currently, between ~$150 and $500/month), there is a yearly deductible, and the insurance only pays 80% of claims that are covered.  If you fail to pay the monthly premium, the insurance company will drop you.  Seems (and is) VERY pricey, but you do it to protect both yourself and your family.  If something unexpected happens, you are relying on that pricey insurer to honor its agreement and pay for whatever care you might need.

Tragically, you are then diagnosed with the most aggressive, deadly form of brain cancer and there is only one treatment that has any prospect of extending your life.  It is made by a single company and there are no alternatives.  You and your family are devastated by this news, but you have planned for something like this with the pricey insurance.  The diagnosis and initial treatment (*i.e.*, brain surgery) mean that you have to stop working earlier than you hoped,[2] there are increased expenses in co-pays, etc., and money is tight.  Nevertheless, you keep paying the premiums for the insurance you invested so much to qualify for - now that you actually need it.

---

[1] Others advise you not to sign up for this insurance and, instead, invest the same amount of money in an S&P index fund.  If you did that, you would actually still have the money and, from 1991-2020, would have enjoyed an annual return of ~10.7% (or ~8.3% accounting for inflation).  For legal reasons, this is not an option and you have to sign up for the insurance anyway.

[2] With your PhD from MIT, you were employed by companies under contract to NASA.

Rather than honoring their agreement and coming to your aide in your time of need, the insurance company reneges and tells you that, if you want them to honor their agreement, you are going to have to hire a lawyer and force them to.

You do just that.

And you win.

It is determined that your claim should have been covered and the insurance company is ordered to pay.

The next time you submit a claim, incredibly, the insurance company rejects your claim on the same grounds it lost on and tells you that, if you want it to honor its agreement, you are going to have to hire a lawyer and force them to - again. This time, the insurance company adds the defense that, having taken at least hundreds of dollars from you (a brain cancer patient), if they fail to honor their agreement (even intentionally or baselessly), you cannot complain.

That is this case.

Only a special kind of organization would take money from a brain cancer patient, renege on its promises, and force the brain cancer patient into repeated litigation.

This is a case for specific performance of the Medicare insurance contract.

## I.      DISCUSSION

**A.      Mr. Banks Has Standing Because He Has Suffered an "Actual Injury"**

As set forth in Mr. Banks' papers (*see* Doc. 67 at 4-7), Mr. Banks paid, at least, several hundred dollars for an insurance policy that has not been honored. Indeed, because the allegations of the Complaint must be taken as true at this stage, this is not a case of mistake and is instead a case of an outright refusal to honor the terms of the insurance agreement.  As a result, Mr. Banks has suffered an economic injury in the loss of ~$450-$1,500 and/or an invasion of his legal right to Medicare Part B coverage.  However considered that is an "actual injury" that Mr. Banks has suffered, it is "concrete and particularized", and is capable of being redressed by this Court.  Thus, Mr. Banks has standing.

At an absolute minimum, until Mr. Banks either gets the premiums back or the insurance contract is honored, Mr. Banks will have suffered an injury.

**B.      Mr. Banks Has Standing Based on the Denial of His Substantive, Statutory Rights**

Again, in the interests of brevity, Banks refers the Court to his earlier filing in this regard.  *See* Doc. 67 at 7-11.  The dispute regarding whether the denial of a statutory right is sufficient to confer standing comes down to the Supreme Court's distinction between "substantive" and "procedural" statutory rights.  As set forth in *Spokeo, Inc. v. Robins*, 136 S.Ct 1540 (2016), the mere violation of a "procedural

4

right" *may*, or may not, be sufficient to confer standing.  *Id*. at 1549.  But the Supreme Court did not hold that the violation of a "substantive right" was not sufficient to confer standing.

As one court explained:

A "procedural right" is defined as "a right that derives from legal or administrative procedure; a right that helps in the protection or enforcement of a substantive right." In contrast, a "substantive right" is "a right that can be protected or enforced by law; a right of substance rather than form."

*Bock v. Pressler & Pressler, LLP*, 254 F. Supp. 3d 724, 732 (D. N.J. 2017) (cleaned up).  Here, Banks alleges a violation of his substantive statutory right to payment of his Medicare claim by Medicare.  Notably, the Secretary does not dispute that the rights conferred by 42 U.S.C. §§ 405(g), 1395ff(a)(1)(A), and 1395k(a)(1) are substantive rights.  That the Secretary asserts that someone other than Medicare should bear the expense of the claim does not change the violation of Banks' statutory right created by Congress that payment to him be made *by Medicare*. Again, Banks has standing.

Being denied his substantive statutory right to Medicare payment for his treatments, Banks has suffered injury.  If the Court rules for him as to the underlying issue of coverage/collateral estoppel, he will receive his substantive statutory right to payment by Medicare.  If his claim is denied, he will not receive such payment by

Medicare. Thus, Banks' injury can be redressed by this Court and Banks has standing.

## C. Mr. Banks Additionally Has Standing Based on the Medicare "Mulligan"

### 1. The Secretary's Failure/Refusal to Provide Discovery

In the case that was remanded to this Court explicitly for consideration of, *inter alia*, the *Holt* decision, telling, the Secretary's brief is entirely silent on it. *Holt* shows that once an ALJ denies a claim for a treatment, a Medicare beneficiary faces tangible risk that they will bear personal financial responsibility for future claims for that treatment. The Eleventh Circuit directly referenced *Holt* in its decision vacating and remanding, because it believed it bears on Mr. Banks' standing to pursue his claims hear. Then, the Secretary failed to address it.

The Secretary's current brief is filled with assertions about how Advanced Beneficiary Notices (ABNs) purportedly work and how the statutes/regulations for financial liability should be read (*see, e.g.*, Doc. 65 at 5-7) that are totally inconsistent with *Holt*. While Mr. Banks believes that the Secretary's assertions are wrong and that *Holt* is conclusive on the issue (or at least how the Secretary has *actually* applied the statutes/regulations), the Secretary disputes that but simultaneously refuses to produce evidence that would contradict the Secretary's assertions in this case (*i.e.*, the other decisions like *Holt*). Indeed, even were this Court inclined to credit the Secretary's assertions at all—and the Court should not--

6

it is vitally important that Banks receive his requested discovery regarding other QIC/ALJ decisions, because these otherwise are confidential and the results are unavailable.

Alternatively, an adverse inference exists that the Secretary has been applying the statutes/regulations as in *Holt* and the Secretary has not rebutted that inference. The Secretary could completely disprove Banks' allegations by producing the relevant QIC/ALJ' decisions (which are solely within his control) but has failed/refused to do so.  Accordingly, an adverse inference exists that the withheld evidence is unfavorable to the Secretary.  *See, e.g., TransUnion LLC v. Ramirez,* 141 S.Ct. 2190, 2212 (2021) (*citing Interstate Circuit v. U.S.*, 306 U.S. 208, 226 (1939) ("The production of weak evidence when strong is available can lead only to conclusions that the strong would have been adverse.  Silence then becomes evidence of the most convincing character.", cleaned up)); *U.A.W. v. N.L.R.B.*, 459 F.2d 1329, 1336-38 (D.C. Cir. 1972).  Indeed, rather than "weak evidence", the Secretary has produced no evidence.  Given that the adverse inference has not been rebutted, Mr. Banks' allegations must be accepted as true.  Accordingly, Banks has standing because, unless reversed, the denial of the claims at issue charges Banks with "knowledge" and the present loss of the Medicare "mulligan" and/or the substantial risk of harm by being held personally liable on future claims.  Thus, Banks has suffered an injury and has standing.

2.      *Holt* **Shows Mr. Banks Has Standing Because He Faces The Loss of His Medicare "Mulligan"**

As demonstrated in *Holt*, the statutes and the Secretary's own regulations mean that a denial of a claim charges the beneficiary with "knowledge" of the denial and the beneficiary losses the right to the Medicare "mulligan" going forward.[3] *See* Doc. 66 generally.  Further, on subsequent claims, when both the beneficiary and the supplier have been charged with "knowledge" of the prior denial, the beneficiary may be held personally liable – even in the absence of an ABN.

The Secretary's citation to 42 U.S.C. § 1395u(b)(3)(B)(ii) ((Doc. 65 at 7) is plainly inapplicable because it concerns payments for "services", while this case concerns payment for items (*i.e.*, "durable medical equipment").  The Secretary's citation to MEDICARE CLAIMS PROCESSING MANUAL, Chap 30, § 150 (Doc. 65 at 7) is fully consistent with both Banks' reading and the *Holt* decision.  The quoted section provides that for both assigned and unassigned claims, if the provider knew that the claim would be denied "and for which the beneficiary did not know", then the provider is liable.  However, once a claim is denied, the beneficiary is charged with knowledge and, pursuant to Chap 30, § 30.1, where both the supplier and the beneficiary have knowledge, the beneficiary is liable.

---

[3] As indicated, the "knowledge" can come from any source and in any form and is not dependent on a prior "mulligan" payment.

8

While the statutes and regulations have complicated references to "assigned", "unassigned", "durable medical equipment, etc., at the end of the day, the Secretary cannot explain the existence of *Holt* and why its own manuals state that when the beneficiary and the supplier both have knowledge, the beneficiary will be held liable. *See* MEDICARE CLAIMS PROCESSING MANUAL, Chap 30, § 30.  Given the Secretary's assertions, that section should not exist and neither should *Holt*.[4]

Unless the denial in this case is reversed, Mr. Banks will be charged with "knowledge" of the denial and suffer the present loss of the Medicare "mulligan" and a substantial risk of personal liability on future claims.  Thus, Mr. Banks has been injured and has standing.

---

[4] The Secretary's citation to *Pehoviack v. Azar*, No. 20-cv-00661, 2020 WL 4810961 (C.D. Cal. July 22, 2020) (Dkt. #65 at 17) is affirmatively improper.  Mrs. Pehoviack passed away during the litigation and, over the Secretary's objection, the decision cited to was vacated by the Ninth Circuit. *See Pehoviack v. Azar*, Appeal No. 20-55841, Dkt. #11 (9th Cir. Dec. 10, 2020) ("We vacate the district court's decision below[.]").  Thus, the Secretary's citation to a decision he knows is vacated without disclosing that fact is improper.  Likewise, the plaintiff in *Komatsu v. Azar* passed away before her litigation could be completed as did multiple other persons whose cases were originally filed.  The very tragic situation GB patients are in and the risk that they will not survive to enjoy vindication of their claims is, Plaintiff believes, one reason the Eleventh Circuit ordered this matter to be resolved expeditiously.

9

## II.    CONCLUSION

At base, Mr. Banks paid $450-$1,500 for something he did not receive and to which he is entitled (*i.e.*, Medicare payment of his claims).  No one should be heard to say that when a brain cancer patient makes these payments and is wrongly denied benefits, they are not injured and their claims should not be heard.

For the reasons set forth above, this Court should find that Mr. Banks has standing.

/s/Robert R. Baugh
Robert R. Baugh
**Attorneys for Plaintiff**

**OF COUNSEL:**
**DENTONS SIROTE PC**
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Tel:   205-930-5307
robert.baugh@dentons.com

-AND-

**PARRISH LAW OFFICES**
James C. Pistorino
788 Washington Road
Pittsburgh, PA 15228
Telephone: (412) 561-6250
james@dparrishlaw.com

*Attorneys for Plaintiff*

DOCSBHM\2371560\6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 18, 2021 I filed the foregoing with the Clerk of Court using the CM/ECF electronic filing system which will send notification of such filing to all counsel of record in this case.

/s/Robert R. Baugh
OF COUNSEL

11