# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| EDWIN R. BANKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| XAVIER BECERRA, in his official ) | 5:20-CV-0565-LCB |
| capacity as Secretary of ) | |
| Health and Human Services, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT'S SUR-REPLY TO
## PLAINTIFF'S "REPLY ON DISCOVERY MOTION" AND
## PLAINTIFF'S "SUPPLEMENTAL REPLY ON DISCOVERY MOTION"

## I. Introduction.

This sur-reply is necessary because Banks's counsel have made either misleading or inaccurate statements and insinuations along with other novel arguments in their Reply to Defendant's Response to Plaintiff's Motion for Discovery (Doc. 75) (hereinafter "Reply") and in their Supplemental Reply (Doc. 76) (hereinafter "Supplemental Reply"). The Secretary will be prejudiced if not allowed to correct the record.

Banks's specious assertion that the "the Secretary conducts secret proceedings that result in secret decisions" ignores the very nature of the Medicare program's administrative appeals process. *See* Reply (Doc. 75) at 1. The requested decisions issued by the Qualified Independent Contractors ("QICs") and Administrative Law Judges ("ALJs") and the Medicare Appeals Council pertain to Medicare beneficiaries' medical diagnoses, claims information, and other personal information. The decisions are intensely personal and are protected from public disclosure by applicable federal laws. *See* Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule, 45 C.F.R. pts. 160, 164; Privacy Act of 1974, 5 U.S.C. § 522a. To the extent the proceedings are "secret," that is because federal law entitles Medicare beneficiaries to a substantial degree of privacy with respect to what happens with their private medical information.

Nothing in Banks's Reply or Supplemental Reply changes the fact that his motion for discovery should be denied because the requested discovery is not relevant to this case. Even applying Banks's interpretation of the Medicare statute to the facts of this case, Banks does not have standing. As discussed in the Secretary's Response brief (Doc. 69) at 14–15, Banks is no longer using the tumor treatment field therapy ("TTFT") device that is central to the dispute in this case.[1] Banks has not rebutted that the Local Coverage Determination ("LCD") for TTFT coverage changed after his 2018 claims were denied. Banks has not rebutted that no TTFT has been denied under the 2019 LCD or that he has ever been held liable for a TTFT claim. The requested documents have no bearing on these undisputed facts.

Finally, Banks's counsel have implied that their knowledge—obtained via cases similar to this one that they have litigated in other circuits—of documents or administrative decisions that they contend are relevant to this case prove that the Secretary has something to hide. But Banks's counsel have failed to inform this Court that they have lost in every other jurisdiction where they have brought these cases but one. Banks's counsel have represented a number of Medicare beneficiaries

---

[1] The Eleventh Circuit assumed that Banks was still using the TTFT device when it remanded the case to this court. *Banks v. Sec'y of Health and Human Servs.*, No. 2011454, 2021 WL 3138562 at 7 n.2 (11th Cir. July 26, 2021) ("Banks says he is all but certain to submit additional claims for TTFT coverage in light of his present and consistent reliance on the device to treat his glioblastoma multiforme. *See* Appellant's Br. at 2 (Banks has used the TTFT device since 2013 and believes his "medical need for TTFT treatment has been the same."); [Compl. (Doc. 1)] ¶ 17 ("[P]atients prescribed TTFT treatment will have to continue that treatment for the rest of their . . . lives.")).

whose claims for TTFT were denied prior to the 2019 LCD. In all of these cases, the beneficiaries were found not liable for the claims. Banks's assertion of standing based on future harm has been rejected by half a dozen district courts and the Seventh Circuit, none of which involved the discovery requested in this case. Here, for the first time, Banks seeks discovery to establish standing. If the issue of standing could be disposed of without recourse to discovery in most every other court to consider similar cases filed by Banks's counsel, there is no reason why such discovery should be necessary here.

For the benefit of the Court, the table attached as Doc. 79-1 summarizes the district court rulings and appellate status of identical TTFT cases litigated by Banks's counsel. As well, attached as Doc. 79-2 is a representative opinion from the Northern District of Mississippi dismissing the case for lack of standing in *Wilmoth v. Azar*, No. 3:20-cv-120-NBB-RP, 2021 WL 681118 (N.D. Miss. Feb. 22, 2021).

## II. Banks's Counsel Has Made Multiple Assertions and Insinuations that Are Misleading or Inaccurate.

In their Reply and Supplemental Reply, Banks's attorneys make multiple assertions and insinuations that are either misleading or simply inaccurate regarding the conduct of defense counsel and statements made by that counsel. It is important that the record on this matter be corrected to provide the full context refuting counsel's insinuations. These are addressed in turn.

A.     **Telephone Conference of October 29, 2021.**

As the Court is aware, at issue in this matter is whether Banks is entitled to discovery. Several days after filing his Reply on October 22, 2021, Banks's counsel requested a phone consultation with counsel for the Secretary regarding matters discussed in the parties' briefs on the issue of discovery. That discussion took place on October 29, 2021. During the call, Banks's counsel indicated that they intended to file a Motion to Strike a document filed by the Secretary in his Response to Plaintiff's Motion on Discovery—specifically, the Declaration of McArthur Allen (Doc. 69-5)—and asked if such motion would be opposed. The undersigned indicated that it would be.[2]

Later that same day, without consulting the undersigned and without seeking leave of Court, Banks's counsel filed a "Supplemental Reply on Discovery Motion" (Doc. 76) which made arguments that were, in substance, communicated as a motion to strike,[3] and indicated that such filing was opposed. It was not opposed; indeed,

---

[2] Such motion would not be properly before the Court. The strictures of Fed. R. Civ. P. 12(f) limit the applicability of a motion to strike to "a pleading," and the declaration in question was not advanced in "a pleading." *See* Fed. R. Civ. P. 7(a) (listing the "[o]nly" pleadings allowed, which list does not include a response brief to a motion). It was the Secretary's intention to file a response in opposition to any motion to strike once it had been filed. The arguments that Banks's counsel represented to the undersigned would be made in that motion were, instead, made in the Supplemental Reply—hence the need for this Sur-Reply.

[3] *See* Def. Supplemental Reply (Doc. 76) at 1 (Plaintiff's "declaration [(Doc. 69-5)] should be stricken"); *id.* at 3 ("on its face, the declaration lacks indicia of reliability, is merely conclusory, and therefore should be stricken").

5

the undersigned was never provided the opportunity to express consent or opposition to any filing styled as a "Supplemental Reply." By taking this action rather than filing a motion to strike, Banks intends to deprive the Secretary of an opportunity to respond to the arguments made therein, thereby necessitating the Secretary's request to file this Sur-Reply.

      **B.    Other Misrepresentations Made by Banks's Counsel.**

Banks's counsel state that they "sought to work with the Secretary to fashion discovery that would bear on the issue [of standing] in the least burdensome way," but that "[t]he Secretary did not substantively respond on how to narrow discovery but instead just declined to provide any discovery." Banks's Reply (Doc. 75) at 2. But the Secretary communicated his position to Plaintiff's counsel and declined to provide discovery because it is not warranted or appropriate. That *is* a substantive response. Counsel's suggestion that the counsel for the Secretary has been less than forthcoming or has refused to work with Banks is unjustified and inaccurate.

Second, Banks implies that the Secretary is stonewalling: "contemporaneous with the filing of this reply, Banks has requested that Mr. Allen be made available for deposition but has received no response from the Secretary." Banks's Reply (Doc. 75) at 2. What Banks neglects to share with the Court is that his counsel sent an email requesting that deposition to the undersigned at 1:31 p.m. on Friday, October 22, and then filed his Reply just over three hours later, at 4:44 p.m. on that

same date. The undersigned was not even given the courtesy of one business day or a phone call to respond to Banks's request.[4] Both the undersigned and agency counsel representing the Secretary have endeavored to work with opposing counsel as professionally and cordially as possible, without making insinuations or otherwise impugning the integrity of opposing counsel when the parties disagree.

### III. Banks Misconstrues Applicable Law Regarding When Discovery Is Available Under 42 U.S.C. § 405(g).

Banks contends that the Secretary has misstated the law when he argues that the Supreme Court has held, under 42 U.S.C. § 405(g), that a district court may order discovery beyond the administrative record only where there is "a strong showing of bad faith or improper behavior" by the agency. *Dep't of Commerce v. New York*, --- U.S. ---, 139 S. Ct. 2551, 2573–74 (2019) (quotation marks and quotation omitted); *see* Def. Response (Doc. 69) at 7 (expounding that argument). Banks hangs his hat on the presence of two words in two separate decisions:

- First, the word "generally" in the following quotation from an Eleventh Circuit case quoted by the Secretary in his Response: "Though certain circumstances may justify the district court going beyond the administrative record, it is not *generally* empowered to do so." *Alabama-Tombigbee Rivers Coalition v. Kempthorne*, 477 F.3d 1250, 1262 (11th Cir. 2007) (emphasis added).

- Second, the presence of the word "ordinarily" in the following quotation from the Supreme Court in *New York*: "In reviewing agency action, a court

---

[4] Subsequently, the Secretary's counsel communicated to Banks's counsel that any deposition would be considered part of the discovery process and would not proceed unless and until this Court orders that discovery proceed.

is *ordinarily* limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *New York*, 139 S. Ct. at 2573 (emphasis added).

Banks contends that due to the presence of the words "generally" and "ordinarily" in these decisions, "when an issue arises which goes beyond the merits of the decision under review itself, then discovery has been allowed." Banks's Reply (Doc. 75) at 3.

Banks misstates the law. The Eleventh Circuit used the word "generally" and the Supreme Court used the word "ordinarily" because the latter, in *New York*, set out **a lone exception** for when discovery is available to a party: "Finally, we have recognized **a narrow exception** to the general rule against inquiring into 'the mental processes of administrative decisionmakers.' [*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)]. On a 'strong showing of bad faith or improper behavior,' such an inquiry may be warranted and may justify extra-record discovery. [*Id.*]" *New York*, 139 S. Ct. at 2573–74 (emphasis added). That is the only exception recognized by the Court; there is no language providing that this is an identified exception, but not the only one. *Cf. Gustafson v. Alloyd Co.*, 513 U.S. 561, 577 (1995) ("the presence of limiting language . . . requires a narrow construction"). Indeed, as the Court states in the very next sentence in *New York*, "[t]he District Court invoked **that exception** in ordering extra-record discovery here." 139 S. Ct. at 2574 (emphasis added). This language makes clear that the Supreme Court

permits no other exception to § 405(g)'s strictures regarding the impropriety of discovery except where there is a "strong showing of bad faith or improper behavior." Because Banks neither makes nor asserts such showing here, 42 U.S.C. § 405(g) dictates that he is not entitled to discovery in this action.

### IV. Banks's Misstates the Nature of the Secretary's IT Systems and the Means by Which the Discovery He Seeks May Be Obtained.

In the Supplemental Reply, Banks's counsel writes "During the meet and confer held on October 29, 2021, the Secretary's counsel confirmed that, at least, the MAS [Medicare Appeals System] is stored in an Oracle database but also contend that there was no way to query the Oracle database other than by individual appeal numbers." Doc. 76 at 2. That statement is false. No counsel for the Secretary stated that the Medicare Appeals System is stored in an Oracle database. Opposing counsel named several types of databases and asked both counsel for the Secretary present on the call[5] which the Appeals System files were stored on and agency counsel for the Secretary stated, truthfully, "I don't know."

Further, Banks's counsel style themselves as experts on the technology systems employed by the Secretary—something they know nothing about. *See* Banks's Reply (Doc. 75) at 5–8 (purporting to have in-depth knowledge of and to understand how the Agency's IT system is structured); Supplemental Reply (Doc.

---

[5] Both the undersigned and agency counsel for the Department of Health and Human Services were present on the call.

9

76) at 3–5 (purporting to explain precisely how the Secretary can produce the discovery requested based on a false understanding of the nature of the Secretary's IT systems and how they function). Banks's allegations on the mechanics and operations of the Secretary's information technology systems are simply that: allegations. Neither Banks nor his counsel have any substantive knowledge of those systems or their operation. Plainly, such allegations should be ignored, and especially so when Banks himself argues that it is inappropriate to present evidence on this subject when the presenter does not have personal knowledge of the nature of the information technology systems in question. *See* Supplemental Reply (Doc. 76) at 3 (the relevant declaration should be stricken because "ALJ Allen does not establish that he has any personal knowledge of how the requested information is stored, identify from whom he gathered any such information, or offer anything about how the information is actually stored.").

Specifically, Banks makes warrantless assertions about an "IT person" making "broader queries" to lessen the burden of the Secretary producing 5,115 ALJ decisions and the QIC/Part C QIC producing 225,837 QIC decisions.[6] Reply (Doc. 75) at 6–7. The declaration of Judge McArthur Allen, Chief Administrative

---

[6] Banks seems confused about the burden to compile the ALJ decisions versus the burden to compile and redact the ALJ decisions. Reply (Doc. 75) at 6. Judge Allen stated in his declaration that it would take six weeks for administrative staff to "compile" the ALJ decisions, not also redact the decisions. Decl. of McArthur Allen (Doc. 69-5) ¶ 11. Judge Allen further stated that redactions would further add to the administrative burden by "many hundreds more hours." *Id.* ¶ 15.

Law Judge for the Office of Medicare Hearings and Appeals (OMHA), and the letters provided by the QICs all state that the decisions must be downloaded individually. Declaration of McArthur Allen (Doc. 69-5); QIC Letter and Data Summary (Doc. 69-6); Maximus Letter (Doc. 71-1.) Judge Allen states that "[t]here is no mechanism in the system to download all the ALJ decisions at once." Doc. 69-5 ¶¶ 7–8. The individual providing the Maximus Letter for the Part C QIC stated that "bulk extracts from MAS are not possible."[7] Doc. 71-1. Banks essentially alleges that the Chief Administrative Law Judge at OMHA and individuals at the QICs are lying about how ALJ and QIC decisions are downloaded. His baseless assertion should be ignored by this court.

Banks further contends that his request "was crafted to avoid the need for review by the Secretary (to exclude Part A, D, or SSA, for example)." Banks's Reply (Doc. 75) at 7. Though Banks claims that the number of decisions he seeks is comparatively minimal (*see id.*), Banks simply doesn't understand the nature of his request. While the Secretary does not disagree that many of the requested decisions may not address financial liability for "durable medical equipment," as is relevant here, Banks's motion for discovery did not exclude those decisions. Banks's motion requests production of "All ALJ and QIC/IRE decisions issued in the last two years

---

[7] The purpose of the Medicare Appeals System (MAS) is to process and adjudicate Medicare appeals. MAS is the central system repository for Medicare Appeals and their related data. https://www.hhs.gov/sites/default/files/cms-medicare-appeals-system.pdf.

(i.e., September 1, 2019–September 1, 2021) in beneficiary appeals that were not fully favorable and were not dismissed on procedural grounds." Motion for Discovery (Doc. 66) at 8.

Banks conflates data on two OMHA webpages to argue that the numbers of decisions provided by the Secretary "do not appear to be correct." Reply (Doc. 75) at 7. First, as Banks points out, his assertions are based on FY 2019 data, not the FY 2020 and 2021 data provided by the Secretary in this case. *See id.* at 7. The FY 2019 data also does not include data from the entire fiscal year as the webpage was last reviewed by OMHA on July 24, 2019. *See* https://www.hhs.gov/about/agencies/omha/about/current-workload/beneficiary-appeals-data/index.html. Second, Banks uses data from a webpage pertaining only to beneficiary appeals and data from a webpage pertaining to *all* of OMHA's workload to make assumptions about the information supplied by the Secretary. Statistics pertaining to all of OMHA's workload include other types of appeals, including those submitted by providers and suppliers, not just Medicare beneficiaries. *See* Reply (Doc. 75) at 7. It is entirely reasonable that statistics pertaining to OMHA's entire workload would be different from statistics pertaining only to beneficiary appeals. Again, Banks's baseless allegations of untruthfulness by the Secretary, based on speculation regarding things of which he has no direct knowledge, should be disregarded by this Court.

Finally, in his Reply Banks makes accusations that the Secretary is concealing evidence and making "assertions about secret decisions." *Id.* at 9. He thus asserts that a negative inference regarding the nature of the decisions Banks seeks should be drawn against the Secretary. *See id.* As noted above, the requested decisions issued by the QICs, ALJs and the Medicare Appeals Council pertain to Medicare beneficiaries' medical diagnoses, claims information, and other personal information. The decisions are intensely personal and are protected from public disclosure by HIPAA, such that any alleged "secrecy" is, in fact, mandated by federal law. Regardless, the Secretary has argued Banks's lack of standing based on the facts of the case and Medicare law and policy. The standards cited by Banks pertaining to a negative inference when a party withholds evidence (*see id.* at 9) are thus clearly inapplicable.

### V.   CONCLUSION.

For the foregoing reasons, the Secretary respectfully requests that the Court deny Banks's motion for discovery and, to the extent it could be so construed, deny the motion to strike implicit within his Supplemental Reply.

//

//

//

//

Respectfully submitted,   PRIM F. ESCALONA
United States Attorney

*/s/ John D. Saxon, Jr.*
John D. Saxon, Jr.
Assistant United States Attorney
United States Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203
205-244-2001